ELSIE ELLEN CRILLEY, Appellant, v. EMMETT M. CRILLEY, Appellee.

No. 45025.

MAY 14, 1940.

Edward J. Dahms, for appellant.

Locher & Locher, for appellee.

RICHARDS, J.—On February 23, 1939, plaintiff filed her petition for divorce averring that defendant had been guilty of such inhuman treatment as to endanger her life. Defendant filed a cross-petition grounded on adultery. On May 29, 1939,

the cause was tried. The findings of the court were that the evidence did not support plaintiff's claims, but entitled defendant to a divorce upon the cross-petition. A decree was entered accordingly on June 3, 1939, from which plaintiff has appealed.

The propositions relied on for reversal are, first, that the record and proof sustained the charge made in plaintiff's petition justifying a divorce from defendant, and, second, that the record and proof did not sustain defendant's claim of adultery.

The parties intermarried on April 20, 1932. Aside from inconsequential matters neither makes complaint of the other's conduct during the first five years of this relationship. But in 1937 during the summer, defendant, because engaged in carpenter and cement work in Davenport, was compelled to be away from the home the parties were maintaining in Prairieburg. No one was living with them in the home except their child, then about 4 years old. In order that plaintiff and the child might not be alone and unprotected it was arranged that defendant's nephew, one Crowley, would live in the home during defendant's absence. The carrying out of this arrangement resulted in the arising of a mutual and intimate fondness between the man and the woman, Crowley and plaintiff, so environed. That is clearly evident from the record.

After the work in Davenport had ended and defendant was again in Prairieburg, Crowley returned to the home with frequency. The record shows that a number of such visits were during defendant's daytime absences while at work. On these occasions the persons at the home were plaintiff and the child. Witnesses, who happened to come to the home during some of these visits, state that the doors were locked. There were meetings elsewhere. There came a time, seemingly in the latter part of 1937 or early in 1938, when defendant demanded of Crowley and plaintiff that they cease meeting each other. But it availed nothing. The defiant attitude plaintiff displayed with respect to defendant's protests is not without significance. It appears in the record, and without much doubt, that on one occasion

plaintiff's statement to her husband was that she would procure a divorce if he did anything, and at another time she replied that defendant could not work any bluff on her, and this despite plaintiff having been told, as the fact appears to have been, that her conduct was becoming a matter of notoriety and comment in the community, reflecting on her child and husband. After February 13, 1939, the parties lived apart, plaintiff taking rooms in a town a few miles distant. There plaintiff and Crowley continued associating, Crowley coming there in his automobile. One of the neighbors testified that Crowley's car was parked where plaintiff had her rooms when the witness went to bed on several different nights, and was parked at the same place when the witness arose in the morning. As an explanation plaintiff offered Crowley's testimony that the car merely happened to be so parked, and that he spent the nights elsewhere. Of this testimony there appears to be no corroboration. That clandestine meetings were frequent is a necessary finding from the record. Relating the testimony in detail would serve no purpose as there is no substantial dispute on that phase of the controversy. Plaintiff meets the showing with a denial of sexual relations on any of these occasions, she as well as Crowley testifying in support of the denial. And no witness offered by defendant claimed to have actual knowledge that there had been such relations. But there were a number of witnesses who testified they saw plaintiff and Crowley in each other's embrace, two of these happenings, according to the witnesses, having been upon the street at night. Another occasion was described as having been in the home of plaintiff and defendant, where plaintiff and Crowley withdrew from the presence of another couple who had come to the home with them, and repairing to another part of the house remained there for an hour or more. When the couple mentioned sought plaintiff and Crowley they were found with arms about each other. Another witness described certain intimacies upon a daybed that entailed the taking of markedly broad and libidinous liberties by both plaintiff and Crowley with the person of the other.

These are by no means all the showings with respect to there having been an adulterous disposition on part of plaintiff as well as Crowley. Some portions of this testimony plaintiff and Crowley as witnesses deny, particularly the daybed incident. So far as the denials go they are of course to be given due consideration. But the record must be taken together, for the circumstances mutually interpret each other, and when combined may lead to a just conclusion. Taken separately, they may be without meaning. Inskeep v. Inskeep, 5 Iowa 204. Though we have viewed the record with the guardedness a controversy of this nature deserves, we are constrained to say that an adulterous disposition on the part of plaintiff as well as Crowley is an unavoidable finding of fact. Their refusal to conduct themselves in conformity with the conventions of society, following defendant's demands that they do so, affords in considerable measure an appraisal of their bent. For in that refusal is inherent an abandonment that eliminates reasonable probability that there was mere indiscreetness and innocent friendship, as counsel for plaintiff would have us view the record. This was not a case founded on an unsavory entrapment. Nor does the controversy depend upon a single happening where the identification of the party charged is in doubt, as in Matheny v. Matheny, 191 Iowa 337, 182 N. W. 375. On the contrary the circumstances and happenings were all of the accused parties' own devising. The opportunities for doing in the manner they were disposed were of their own contriving and they persisted in their enterprise. The district court found that the charge of adultery had been proven. We are convinced this conclusion is sufficiently supported by the whole record, after having given all possible weight to the denials and explanations the plaintiff has made. Defendant was entitled to a divorce.

The proposition that plaintiff should have been granted a divorce on the ground set out in her petition requires but passing notice. The defendant's conduct of which plaintiff complains was concurrent with her own affair with Crowley. But despite what defendant's conduct may have been, the record lacks the necessary showing that plaintiff's life was thereby en-

426

dangered or even her health impaired. The decree of the trial court is affirmed.——Affirmed.

HAMILTON, C. J., and SAGER, HALE, MITCHELL, MILLER, OLIVER, and BLISS, JJ., concur.